NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| N.M., <br><br> Plaintiff, <br><br> v. <br><br> Commissioner of Social Security, <br><br> Defendant. | No. 23cv1093 (EP) <br><br> **OPINION** |

**PADIN**, **District Judge.**

Plaintiff, who suffers from various physical and mental impairments,[1] appeals from the Social Security Administration's ("SSA") denial of disability and disability insurance benefits ("DIB") pursuant to the Social Security Act (the "Act").[2]  D.E. 1.  For the reasons below, the Court will **GRANT** the appeal, **VACATE** the denial, and **REMAND** for proceedings consistent with this Opinion.[3]

I.   BACKGROUND

A. **Plaintiff's DIB Application**

Plaintiff filed a protective DIB application on July 12, 2019, alleging disability beginning May 30, 2019.  R. 33.[4]  SSA denied the application on December 14, 2019, and again upon reconsideration on May 5, 2020.  *Id.*   After Plaintiff requested a hearing, Administrative Law

---

[1] At least part of the SSA's decision found that Plaintiff had physical impairments.  However, because Plaintiff only challenges portions of the denial relating to Plaintiff's mental impairments (schizophrenia and/or major depressive disorder), the Court limits its analysis and discussion primarily to the latter.
[2] 42 U.S.C. § 301, *et seq*.
[3] The Court decides the appeal without oral argument.  *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78(b).
[4] "R." denotes the administrative record.  D.E. 5.

Judge Dina R. Loewy (the "ALJ") conducted a telephonic hearing on September 30, 2020. *Id.* On July 29, 2021, the ALJ denied Plaintiff's application. *Id.*

### B. The ALJ's Five-Step Sequential Evaluation Process

To qualify for DIB, a claimant must show that he is disabled within the meaning of the Act. 42 U.S.C. § 423(a)(1)(E). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *Fargnoli v. Halter*, 247 F.3d 34, 38-39 (3d Cir. 2001). The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "'Work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*

The Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled. Here, that is not at issue; the ALJ found that Plaintiff did not engage in substantial gainful

2

activity during the period from her alleged onset date of May 30, 2019 through her date last insured of December 31, 2021.  R. 35.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]"  20 C.F.R. § 404.1520(c).  If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.  Here, the ALJ found four severe impairments: obesity; diabetes mellitus; thrombotic microangiopathy; and schizophrenia.  R. 35.  Only the latter is at issue here.  *Id.*

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(d).  If so, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months.  *Id.* at § 404.1509.  Otherwise, the ALJ proceeds to step four.

Here, the ALJ found that through the date last insured, Plaintiff did not, for any of the conditions in step two, have a mental impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  R. 36.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work.  20 C.F.R. § 404.1520(e), (f).  If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to the final step.  Here, the ALJ found that Plaintiff had the residual functional capacity

3

>to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to standing in 15 minute increments at a time before resuming sitting; no operating foot controls; perform simple, routine, and repetitive tasks; low stress jobs, defined as only occasional decision making and only occasional changes in the work setting; no interaction with the public; occasionally interact with co-workers and supervisors; no fast-paced production requirements, such as having to produce 50 widgets a day.

R. 38. This step is not at issue, though may be impacted by the analysis for the other steps.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months. Here, the ALJ found that, "considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." R. 43. As with step four, this step is not directly at issue, but would be impacted by the impairment findings in steps two and three.

### C. Plaintiff Appeals

After the ALJ's denial, Plaintiff appealed to the SSA Appeals Council, which affirmed the ALJ on July 14, 2022. R. 11. On February 24, 2023, Plaintiff filed this appeal.[5] Plaintiff's brief followed. D.E. 6 ("Pl. Br."). Defendant, the SSA Commissioner, opposes. D.E. 7 ("Opp'n). Plaintiff replies. D.E. 11 ("Reply").

---

[5] On January 23, 2023, the Appeals Council extended Plaintiff's time to file an additional 30 days from receipt of the letter. R. 1.

Plaintiff does not specify which steps of the five-step sequential evaluation process she is challenging. For the purposes of this Opinion, it appears that Plaintiff is challenging evidence used in the ALJ's second- and third-step evaluations.

## II.   LEGAL STANDARD

Judicial review of an SSA determination is based upon the pleadings and the transcript of the record. The scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the ALJ's findings of fact. *See* 42 U.S.C. 405(g) ("[t]he findings . . . as to any fact, *if supported by substantial evidence*, shall be conclusive"); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (district court has plenary review of all legal issues, and reviews the ALJ's findings to determine whether they are supported by substantial evidence). If the district court finds this to be so, it must uphold the Commissioner's final decision. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it

is overwhelmed by other evidence - particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion." *Id.*

To facilitate review, an ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions with conclusory findings or which indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06. And the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

### III. REVIEW OF ALJ'S OPINION

Plaintiff challenges three aspects of the ALJ's opinion. First, Plaintiff argues that the ALJ improperly evaluated the opinions of state agency psychological consultants, Doctors Nicholas Rios, Psy.D and Steven Reed, PhD, including the failure to reconcile an internal inconsistency. *See* R. 83. Second, Plaintiff argues that the ALJ improperly evaluated the opinion of psychological consultative examiner Courtney Ray, PhD ("Dr. Ray"). *See* R. 293. And third, Plaintiff argues that the ALJ improperly evaluated Plaintiff's husband's third-party function report. *See* R. 177 ("Husband's Report").

The ALJ properly evaluated the reports of Doctors Rios and Reed, which were not, as Plaintiff argues, internally inconsistent. However, the Court agrees with Plaintiff that Dr. Ray's report and the Husband's Report, read together, demanded further analysis by the ALJ as to whether Plaintiff's mental limitations were moderate to marked, as Dr. Ray found, or merely moderate, as Doctors Rios and Reed found.

## A. The ALJ Properly Evaluated the State Agency Consultants' Medical Opinions

First, Plaintiff challenges the ALJ's discussion the opinions of Doctors Rios and Reed,[6] which the ALJ found "persuasive." The ALJ noted that the doctors:

> found the claimant to have moderate limitations in interacting with others, concentration, persistence or pace, and adapting or managing oneself. As noted above, the claimant received only conservative treatment and demonstrated mostly normal mental status examination results. Nevertheless, the undersigned has found to claimant to have moderate mental limitations and included them in the residual functioning capacity to give her the benefit of the doubt regarding her reported symptoms.

R. 42 (cleaned up).

This analysis, Plaintiff argues, failed to reconcile an inconsistency in Dr. Rios's RFC determination. Pl. Br. at 15. Specifically, Dr. Rios opined that Plaintiff had a "moderate limitation" in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." R. 83. This, Plaintiff argues, conflicts with a later statement in the same document that Plaintiff "may have occasional interruptions from psychologically based symptoms, but has the ability to complete a normal workday and work week without an unreasonable number and length of rest periods." R. 84. The first finds a limitation, Plaintiff argues, while the second does not.

However, as the Commissioner argues in opposition, the two statements can be harmonized by a portion of Dr. Rios's determination that Plaintiff omitted: that Plaintiff "has the ability to maintain attention and concentration for at least two hours duration." R. 84. Thus, Plaintiff is "moderately limited" in her ability to completely a workday and work week without interruptions,

---

[6] Dr. Reed largely affirmed Dr. Rios's findings. *See* R. 94, *et seq.* Plaintiff's arguments focus on Dr. Rios's report.

but can still do so with a reasonable number and length of rest periods: approximately every two hours. Despite disagreeing with Dr. Rios's assessment of a moderate psychological limitation, the ALJ accepted and accounted for such a limitation. R. 41 (giving Plaintiff "the benefit of the doubt regarding her symptoms").

Thus, the ALJ's determination can be differentiated from *H.G. v. Comm'r of Soc. Sec.*, No. 20-7560, 2021 U.S. Dist. LEXIS 157775, at *6-7 (D.N.J. Aug. 20, 2021), cited by Plaintiff, in which the ALJ "overlooked a key finding . . . that [the claimant had] a moderate limitation to the ability to perform activities within a schedule." Here, despite disagreeing with Dr. Rios's moderate limitation finding, and justifying that disagreement, the ALJ *accepted* the moderate limitation and factored it into the RFC.

Accordingly, this argument does not justify disturbing the ALJ's decision. As discussed below, however, the ALJ did not adequately analyze evidence which suggested *more* than a moderate limitation.

### B. The ALJ Improperly Evaluated Dr. Ray's Opinion and Plaintiff's Husband's Third-Party Function Report

Plaintiff next challenges the ALJ's evaluation of Dr. Ray's opinion, which the ALJ found only "persuasive in part." Pl. Br. at 24; R. 41. Specifically, the ALJ found *un*persuasive Dr. Ray's opinion that Plaintiff "had moderate *to marked* difficulties in adapting to normal home and work stressors, moderate difficulties with co-workers and supervisors, and little difficulty in comprehending and carrying out simple or complex directions in a one on one office setting." R. 41 (emphasis added) (citing R. 297). The ALJ found "vague and speculative" Dr. Ray's opinion that Plaintiff "is likely to continue to have moderate to marked difficulty adapting to normal home and work stressors is unpersuasive for the above reasons." R. 42. The ALJ contrasted Dr. Ray's conclusion with Dr. Ray's "own clinical findings[:] . . . appropriate eye contact, cooperative

8

behavior, normal psychomotor activity, intact memory, adequate attention and concentration, and a normal thought process with no evidence of a thought disorder." R. 41-42.

Plaintiff characterizes this analysis as "insufficient" and "bare-bone," requiring the Court to "speculate about reasons behind the ALJ's persuasiveness finding or lack thereof." Pl. Br. 25. The Court agrees.

ALJs must "articulate . . . how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings" in a claimant's record. 20 C.F.R. § 404.1520c(b). The "most important" persuasiveness factors are "supportability" and "consistency." 20 C.F.R. § 404.1520c(b)(2). Thus, ALJs are expected to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id.*

However, the ALJ does not have to "use particular language or adhere to a particular format in conducting [its] analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Instead, review is "directed to the record as a whole, and not just to the narrow universe of medical opinions." *Weidner v. Kijakazi*, No. 20cv1250, 2022 U.S. Dist. LEXIS 18502, at *35 (D. Del. Feb. 1, 2022) (citing *Laicha v. Kijakazi*, 2021 U.S. Dist. LEXIS 166631, at *12 (M.D. Pa. Sept. 2, 2021) (upholding ALJ's rejection of treating source opinion as unpersuasive because "the opinion was inconsistent with his treatment notes . . . as well as [the claimant's] self-reported activities of daily living")).

Here, many of Plaintiff's arguments regarding Dr. Ray are unavailing. First, as the Government argues, the ALJ detailed her reasoning for finding that Dr. Ray's "vague and speculative" opinion that Plaintiff had moderate to marked difficulties "is not fully supported by her own clinical findings." R. 41, 42. Specifically, Dr. Ray's own examination found that Plaintiff

9

had "appropriate eye contact, cooperative behavior, normal psychomotor activity, intact memory, adequate attention and concertation, and a normal thought process with no evidence of a thought disorder." *Id.*; *see also* R. 296 (Dr. Ray's report noting behavioral observations and mental status). Dr. Ray likewise noted that Plaintiff "adequately completed multistep directions and accurately read and completed simple instructions"; "demonstrated fair to good insight and judgment and intact cognitive functioning"; and "received conservative treatment and did not report any difficulties in socializing with others." R. 41-42.

However, the ALJ's analysis does *not* discuss the portions of Dr. Ray's findings based on other factors, including Plaintiff's "history and self-report." R. 297. That history includes "frequently experiencing blackouts" in which Plaintiff would "hit others, urinate in bed, argue with her husband, and hit her mother." R. 294-95. Plaintiff reported that even between schizophrenic episodes, she "experiences notable symptoms of depression." R. 295.

This dovetails with Plaintiff's final, and most compelling, argument. Specifically, Plaintiff argues that the ALJ erred by failing to properly evaluate the Husband's Report. Because it is unclear from the record whether it was adequately considered, and because proper consideration could feasibly have resulted in a finding of marked, not moderate, limitation—consistent with Dr. Ray's determination—the Court finds that remand is warranted.

An "ALJ must consider and weigh all of the non-medical evidence before him." *Dantzler v. Kijakazi*, No. 1:20-cv-01261, 2022 U.S. Dist. LEXIS 95082, at *15 (M.D. Pa. May 26, 2022). "When an ALJ rejects testimony, function reports, or medical opinions because they are not consistent with other evidence, the ALJ must address any other probative evidence, including nonmedical evidence, which might bolster the rejected statements."

10

*Dantzler v. Kijakazi*, No. 1:20-cv-01261, 2022 U.S. Dist. LEXIS 95082, at *15 (M.D. Pa. May 26, 2022).

In 2017, SSA amended its regulations to provide that an ALJ need not "articulate how [they] considered evidence from nonmedical sources using the requirements" applicable to consideration of medical evidence, *e.g.*, supportability, consistency, relationship with the claimant, specialization, and other factors "tend[ing] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(d) (referencing standards in 20 C.F.R. § 404.1520c(a)-(c)). The new regulations applied to claims, like this one, filed after March 27, 2017. 82 FR 5844, 5845.

But the new regulations are limited in effect; they do not "unambiguously eliminate the requirement to evaluate lay witness testimony *at all*." *Heather P. v. Kijakazi*, No. 3:20-cv-1978, 2022 U.S. Dist. LEXIS 87576, at *8 (D. Or. May 16, 2022) ("[T]he new regulations do not do away with the ALJ's obligation to address lay witness testimony altogether. Instead, it only clarifies that the ALJ does not need to use the new standards for evaluating medical opinion evidence when evaluating non-medical source lay testimony."); *Alyssa W. v. O'Malley*, No. 1:22CV919, 2024 U.S. Dist. LEXIS 19264, at *28-33 (M.D.N.C. Feb. 5, 2024) (noting that the majority of courts to address the issue have found that ALJs "should provide some degree of articulation when evaluating evidence from nonmedical sources").

In evaluating such testimony, an inconsistency with medical evidence is a germane reason for discrediting the testimony of lay witnesses. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). However, an ALJ's failure to describe, and reconcile, a *specific* inconsistency between a lay witness's statement and medical evidence can constitute a basis for remand. *See Joseph M.R. v. Comm'r of Soc. Sec.*, No. 3:18-cv-01779, 2019 U.S. Dist. LEXIS 153831, at *32-33 (D. Or.

11

Sept. 10, 2019) ("Although § 404.1520c(d) states the Commissioner is not required to articulate how we consider evidence from nonmedical sources using the same criteria for medical sources, it does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements."). Thus, the ALJ's failure to do so here justifies remand for further examination. *Gary J.D. v. Comm'r of Soc. Sec.*, No. C22-1821, 2023 U.S. Dist. LEXIS 146531, at *14 (W.D. Wash. Aug. 21, 2023) ("That an ALJ can disregard or reject relevant lay evidence for no reason is inconsistent with the Commissioner's obligation to consider such evidence . . . .").[7]

Moreover, it is not immediately clear that there *was* an inconsistency here between Dr. Ray's findings and the Husband's report. Examining the Husband's Report, the ALJ noted that:

- The Husband cares for the claimant, including helping her take her medication.
- Plaintiff is always tired and sleeps almost all day every day.
- Plaintiff does not prepare meals, is always confused and is unable to pay bills or handle a bank account.
- Plaintiff needs to be reminded to go places and needs to be accompanied when she goes out.
- Plaintiff has "problems with memory[,] concentration[,] completing tasks[,] understanding [and] following instructions[,] walking[,] talking[,] hearing and stairclimbing."

R. 42.

Still, the ALJ rejected the Husband's Report for several reasons. First, the ALJ found it "unpersuasive because the medical evidence does not fully support it." R. 42. But in fact, Plaintiff told Dr. Ray that Plaintiff "needs reminders" to take care of hygiene, has "little desire or motivation to take care of herself," has "little motivation" to do light chores, "sleeps a lot throughout the day," and "has no friends outside of her family." R. 295. Likewise, Plaintiff reported significant prior

---

[7] Indeed, there is significant evidence that Plaintiff relied substantially on her husband's assistance for nearly all tasks. For example, during the hearing—conducted telephonically on September 30, 2020 due to the ongoing COVID-19 pandemic—the Husband was present in the room for at least part of Plaintiff's testimony. *See* R. 64.

12

episodes of difficulty with her mental health. R. 294-25. The record appears to support the need for the Husband's frequent involvement in Plaintiff's care. *See* R. 464 ("Pt came to appt with husband."), 480 (same), 538 ("Husband very supportive."), 548 ("Patient was seen with her husband by her side, spoke to nursing staff. . . . [H]usband is . . . by her side all the time.").

In at least one instance, it appears that the ALJ either insufficiently, or incorrectly, articulated Plaintiff's ability to interact with others, a key factor in her ability to maintain employment. Specifically, the ALJ found that the Husband "reported she spends time with others *and has no problems getting along with family friends neighbors or others*." R. 37 (citing Husband's Report) (emphasis added).

But in fact, the Husband reported that Plaintiff interacts primarily with doctors or her mother and sister. *See* R. 186 ("I help her with everything and at times her mother and sister," *id.* ("don't do her just ponytail or I ask sister"), 189 ("talk in person with mother or sister"), *id.* (goes on a regular basis to "doctor office with [Husband] or to mother's house when [Husband] take[s] her or sister picks her up"), *id.* (needs to be accompanied by Husband, mother, or sister), *id.* (noting that Plaintiff "just kind of sits there while other people talk, she will answer you if you ask something," but not identifying anyone outside of her family). This echoes Plaintiff's self-report to Dr. Ray: that Plaintiff "has no friends outside of her family." R. 296. The ALJ does not address these facts, and how the severity of Plaintiff's condition impacts her ability to interact with others, one of the functional criteria used to determine mental functioning and an RFC for certain work.

Next, the ALJ discounts the Husband's Report because the Husband "is not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or the frequency or intensity of unusual moods or mannerisms." R. 42. But the SSA's regulations provide that ALJs can consider information "from which [they] may draw

13

inferences and conclusions about an individual's statements that would be helpful . . . in assessing the intensity, persistence, and limiting effects of symptoms." 2016 SSR LEXIS 4, at *17-18. This information explicitly includes "non-medical sources such as family and friends." *Id.* at *18.

Thus, though the amended regulations do not require an ALJ to consider nonmedical evidence in the same manner as medical evidence, nor can the nonmedical evidence be rejected *solely because* it is not medical evidence. *See John P. v. Saul*, No. 2:19cv0004, 2019 U.S. Dist. LEXIS 147293, at *36 (N.D. Ind. Aug. 28, 2019) (holding that ALJ's rejection of father's function report violates SSR 16-3p). Rejecting nonmedical evidence solely because it is not medical evidence is circular logic. It also renders the portions of SSA regulations directing the consideration of nonmedical evidence (and the many forms, including the Husband's Report, effectuating those regulations) superfluous. Accordingly, the ALJ's rejection of the Report on this basis also constitutes a basis for remand.

Finally, the ALJ rejects the Husband's Report because, "by virtue of the relationship as the husband of the claimant, [the Husband] cannot be considered a disinterested third party whose testimony would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges." *Id.* But "[t]he fact that a lay witness is a family member cannot be a ground for rejecting [the witness's] testimony." *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996); *see Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition."). *Marlon B. v. Saul*, No. 2:19-cv-318, 2020 U.S. Dist. LEXIS 185563, at *12 (N.D. Ind. Oct. 7, 2020) (citing SSR 16-3p's requirement that "non-medical sources such as family" are to be considered); *John P. v. Saul*, 2019 U.S. Dist. LEXIS 147293, at *11 (N.D. Ind. 2019) (finding that ALJ's reasons for rejecting family

report "are generic and, if given full effect, would render the testimony or report of any family member meaningless").

Thus, the ALJ's rejection of the Husband's Report because it was written by a family member also provides a basis to remand for more fulsome consideration of the Husband's Report.

IV. CONCLUSION

For the reasons above, Plaintiff's appeal will be **GRANTED**, the ALJ's denial of benefits will be **VACATED**, and the matter will be **REMANDED** to the SSA for further proceedings consistent with this Opinion.  An appropriate Order follows.

Dated**:** March 8, 2024

Evelyn Padin, U.S.D.J.

15